UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEUTSCHE BANK NATIONAL TRUST
COMPANY, SOLELY AS TRUSTEE FOR
MASTR, SPECIALIZED LOAN TRUST
2005-2, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-2, BY ITS
SERVICER, OCWEN LOAN SERVICING,
LLC,

    Plaintiff,

v.

KRISTIN BAHRA, et al.,

    Defendants.
_____

UNITED STATES OF AMERICA,

    Counterclaim Plaintiff,

v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, SOLELY AS TRUSTEE FOR
MASTR, SPECIALIZED LOAN TRUST
2005-2, MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-2, et al.,

    Counterclaim Defendants.
_____/

Case No. 1:18-cv-65

Hon. Hala Y. Jarbou

## OPINION

This case concerns questions of liens and priorities. Though many parties are named in this action, only two are presently before the Court: Plaintiff/Counter-defendant Deutsche Bank National Trust Company and the United States, Defendant/Counter-claimant. Both Deutsche Bank and the Government assert liens over one house. The two parties would each like to sell that house to satisfy their respective liens. The Government contends that Deutsche Bank does not have a

valid lien on the house, while Deutsche Bank challenges the validity of the Government's liens. Should the Court find that both parties have enforceable liens on the house, each asks for a ruling that their respective interest enjoys priority over the other.

To address these requests, the Court will now dispose of four motions: (1) the Government's motion for summary judgment (ECF No. 78); (2) Deutsche Bank's motion for summary judgment (ECF No. 82); (3) the Government's motion for default judgment against Counter-defendants IndyMac Bank, FSB, and GMAC Mortgage, LLC (ECF No. 74); and (4) the Government's motion to amend its counter-complaint (ECF No. 118). The Government's motion for summary judgment will be granted in part. Deutsche Bank's motion will be denied. The Government's motion for default judgment will be granted in part. Its motion to amend its counter-complaint will be granted.

## I. Factual Background

There are a few central questions that must be answered: (1) does Deutsche Bank hold a note and its associated mortgage from 2002; and (2) did government tax liens, recorded in 2008 and 2010, survive a 2011 foreclosure sale of the house at issue?

The story begins with Defendants/Counter-defendants Paul and Kristin Bahra. They owned the property at 6545 Wilderness Park Drive (Property), which is in Emmet County. (First Am. Compl., ECF No. 1-1, PageID.7; Emmet County Register of Deeds, ECF No. 83-5, PageID.764.) In 2002, the Bahras acquired a loan from Counter-defendant IndyMac Bank. (*Id.*) The note was secured by a mortgage on the Property (2002 Mortgage, ECF No. 1-1, PageID.18), which IndyMac duly recorded (Emmet County Register of Deeds, PageID.765.)

Things get hazy from there. According to Deutsche Bank, IndyMac endorsed the note and assigned the mortgage to Counter-defendant GMAC Mortgage, LLC. (First Am. Compl., PageID.7; First Feezer Aff., ECF No. 83-2, PageID.656.) On June 1, 2005, GMAC endorsed the

2

note in blank to Deutsche Bank. (First Am. Compl., PageID.7; First Feezer Aff., PageID.656.) Deutsche Bank also became the beneficial owner of the mortgage, but GMAC, acting as loan servicer to Deutsche Bank, remained the holder of the mortgage. (*See* First Am. Compl., PageID.8; First Feezer Aff., PageID.656.) For whatever reason, GMAC did not attempt to record its mortgage interest in the Emmet County Register of Deeds for at least five years.

On September 27, 2010, GMAC recorded an Affidavit of Lost Assignment. (Aff. of Lost Assignment, ECF No. 91-2, PageID.1084.) The Affidavit of Lost Assignment, submitted by GMAC's attorney, stated that IndyMac assigned the mortgage and note to GMAC but that the "original assignment was lost or misplaced before being recorded, attempts to obtain a new, recordable original Assignment" were unsuccessful. (*Id.*) Attached to the Affidavit of Lost Assignment was the note endorsed by IndyMac to GMAC. (*Id.*, PageID.1087.)

About a year later, the Bahras defaulted on their payment obligations. GMAC initiated foreclosure proceedings for a non-judicial sale of the Property. (*See* Sheriff's Deed on Mortgage Foreclosure, ECF No. 83-3, PageID.729.) A sheriff's sale was conducted on November 10, 2011, and GMAC purchased the Property. (*Id.*) GMAC received a Sheriff's Deed, which it recorded on November 29, 2011. (Emmet County Register of Deeds, PageID.764.)

The statutory redemption period for the Bahras to repurchase the house expired on May 23, 2012, but GMAC recorded an affidavit extending the redemption period to June 29, 2012. (*Id.*, PageID.766.) Deutsche Bank says this extension was part of an attempt to modify the note and permit the Bahras to keep their house. That effort was apparently unsuccessful at first, as GMAC attempted to evict the Bahras in August 2012. (*GMAC v. Bahra*, Case No. 12-0995-LT, 90th Judicial District, Compl., ECF No. 78-12, PageID.499.) GMAC and the Bahras agreed to dismiss the case without prejudice in February 2013. (*GMAC v. Bahra*, Case No. 12-0995-LT, Stipulation

to Dismiss, ECF No. 78-17, PageID.525.)  In August 2013, Ocwen Loan Servicing, LLC,[1] replaced GMAC as the loan servicer.  (*Id.*)  The Bahras and Ocwen executed a modified loan agreement in early 2014.  (Loan Modification Agreement, ECF No. 1-1, PageID.37-42.)

In July 2017, GMAC assigned the 2002 mortgage to Deutsche Bank.  (Corporate Assignment of Mortgage, ECF No. 1-1, PageID.30.)  Deutsche Bank recorded the assignment in Emmet County on July 31.  (*Id.*)  Alleging that the Bahras had defaulted on the modified loan, Deutsche Bank filed a complaint in state court seeking a judicial foreclosure sale of the Property. (First Am. Compl., ECF No. 1-1, PageID.4.)

The Government's involvement also begins with the Bahras.  They failed to pay taxes, so the Government imposed three tax liens on the Property.  The liens were recorded on October 17, 2008; June 15, 2010; and December 30, 2010, respectively.  (Notices of Federal Tax Liens, ECF Nos. 78-21 to 78-24.)  As will be explained later, such tax liens are normally extinguished following a foreclosure sale.  The Government avers that it did not receive proper notice of the 2011 foreclosure sale, which would mean its liens on the Property are still valid.

## II. Procedural History

This case originated in state court when Deutsche Bank sued the Bahras in December 2017, seeking a judicial sale of the Property.  After discovering the possible existence of the Government's tax liens, Deutsche Bank filed an amended complaint, which added the United States as a Defendant.  (First Am. Compl., ECF No. 1-1.)  The Government removed the case to the Western District of Michigan in January 2018.  (Notice of Removal, ECF No. 1.)  The Government filed an answer in March 2018.  (ECF No. 13.)  The Bahras failed to appear and defaulted, also in March 2018.  (ECF No. 19.)

---

[1] Ocwen Loan Servicing, LLC, has since merged into PHH Mortgage Corporation.  (First Feezer Aff., PageID.654.)

Following a period of discovery, the United States moved to amend its answer to bring a counterclaim seeking a tax sale of the Property to pay the outstanding tax liens. (ECF No. 29.) To do so, the Government said it had to add the Bahras, IndyMac, GMAC, and Michael Bahra as Counter-defendants.[2] The Government had come to question Deutsche Bank's chain of title, believing that the bank did not validly possess the note or mortgage from 2002. It argued that the 2002 mortgage was never properly assigned from IndyMac to GMAC, which would potentially render the 2011 foreclosure sale invalid. Thus, the Government claimed that the Bahras and IndyMac were necessary parties, as they might have an interest in the Property. GMAC was a necessary party because it still held title to the Property following its purchase of the Property at the foreclosure sale. Finally, the Government argued that Michael Bahra needed to be joined since he held a judgment lien against Paul Bahra.

The Government's motion was granted (ECF No. 45), and the above parties were all added as Counter-defendants. (Am. Answer, ECF No. 48.) None of them have filed answers, and all are now in default.[3] (ECF Nos. 67, 103.) Presently, Deutsche Bank and the Government are the only parties before the Court. The Federal Deposit Insurance Corporation (FDIC) will be added as a Counter-defendant because it may hold relevant assets from IndyMac. IndyMac failed in 2008 and went into receivership under the FDIC. (*See* Government's Br. in Supp. of Mot. to Am., ECF No. 119, PageID.1273-1274.) Substantially all of IndyMac's assets were purchased by CIT Bank, whom the Government served in May 2019 when it added IndyMac as a Counter-defendant. (ECF No. 59.) At that time, the Government believed that IndyMac had merged into CIT Bank. The

---

[2] Michael Bahra holds a judgment lien against Paul Bahra, which was recorded in Emmet County on July 2, 2018. (Judgment Lien, ECF No. 36-1, PageID.325.)

[3] Paul and Kristin Bahra defaulted twice – once as Defendants against Deutsche Bank (ECF No. 19), and again as Counter-defendants against the Government's counterclaim (ECF No. 103).

5

Government has since discovered that some of IndyMac's assets are still held by the FDIC. (Government's Br. in Supp. of Mot. to Am., PageID.1274.)  Because the FDIC may have an interest in the Property, it must be notified of this action and given a chance to appear before the Court can order a sale.[4]

It is against this backdrop that the Court considers the various pending motions.  The Government has moved for default judgment against IndyMac, GMAC, and Michael Bahra.  (ECF No. 74.)  Deutsche Bank objected that the motion was premature and could preclude certain issues that are properly decided on the pending cross-motions for summary judgment.  (ECF No. 75.)  The United States also moves to amend its counterclaim to "correct" its description of IndyMac as a party, which if granted, would require notice to be served on the FDIC.  (ECF No. 118.)  At oral argument, Deutsche Bank objected that the amendment would be futile because Deutsche Bank claims that it indisputably holds the note and mortgage in question.

### III. Standards

**A. Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted).  A fact is material if it "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely

---

[4] FDIC, *Failed Bank Information: Information for IndyMac Bank, F.S.B., and IndyMac Federal Bank, F.S.B., Pasadena, CA*, https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/IndyMac.html#Possible%20Claims%20Against%20The%20Failed%20Institution (last visited March 26, 2021) (FDIC must be notified of potential claims).

6

disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

### B. Amending Pleadings

"A party may amend its pleading once as a matter of course" within 21 days of service. Fed. R. Civ. P. 15(a)(1)(A). Where the 21-day period has elapsed, "[t]he court should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court may weigh the following factors when considering a motion to amend: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party." *Knight Capital Partners Corp. v. Henckel AG & Co.*, 930 F.3d 775, 786 (6th Cir. 2019).

## IV. Analysis

### A. Motions for Summary Judgment

The cross-motions for summary judgment will be addressed on an issue-by-issue basis, since the fundamental goal behind each motion is to determine who has a valid interest in the Property and which of those interests has priority over the other. Deutsche Bank and the Government agree on the legal frameworks that will determine these issues: (1) federal law empowers the Government to seek judicial sale of the house to pay off the tax liens; (2) federal

law determines whether the Government's tax liens were extinguished by the 2011 foreclosure sale; (3) Michigan law governs questions relating to the existence and validity of the mortgage purportedly held by Deutsche Bank; and (4) federal law determines which security interest has priority over the other.

### 1. Deutsche Bank's request for a judicial sale

Assuming Deutsche Bank holds the note and mortgage from 2002 and that the Bahras have failed to make payments on that note pursuant to the modified loan agreement, the bank has a right to foreclose on the Property. *Jaarda v. Van Ommen*, 252 N.W. 485, 486-87 (Mich. 1934); Mich. Comp. Laws § 600.3115. But according to the Emmet County Register of Deeds, GMAC owns the Property. (Emmet County Register of Deeds, PageID.766.) That is no obstacle because, assuming the 2002 mortgage survived the 2011 foreclosure sale, the Property is still subject to that mortgage. *Sylvania Savs. Bank Co. of Sylvania, Ohio v. Turner*, 27 183 N.W.2d 894, 896-97 (Mich. Ct. App. 1970) (mortgage may not be extinguished by purchase of property by mortgagee through foreclosure where junior liens are also attached to the property) (citing *Ponstein v. Van Dyk*, 276 N.W. 475, 476 (Mich. 1937)). Thus, the bank could have sued GMAC, asking the Court to order a judicial sale of the Property given the Bahra's default.

Deutsche Bank chose a different route. Trying to kill two birds with one stone, it seeks to first undo the 2011 foreclosure sale, return the house to the Bahras, "[r]evive" the 2002 mortgage,[5] *and then* foreclose. (First Am. Compl., PageID.7.) This would permit Deutsche Bank to satisfy the Bahra's unpaid debts while also cleaning up the chain of title as recorded in the Emmet County Records. But under Michigan law, courts are "generally disinclined to set aside a foreclosure and

---

[5] Considering it is Deutsche Bank's position on summary judgment that the 2002 mortgage was never extinguished, it is bizarre that its complaint asked to "revive" the mortgage.

sale." *Ypsilanti Charter Twp. v. Kircher*, 761 N.W.2d 761, 782 (Mich. Ct. App. 2008); *see also Madill v. Mich. Nat'l Bank*. 4 N.W.2d 538, 539 (Mich. 1942) ("Statutory foreclosures should not be set aside without some very good reasons.").

A party seeking to rescind a foreclosure after the statutory redemption period must normally show "fraud, accident, mistake, or significant irregularities." *Id.* (internal quotation marks omitted). This standard has been applied to mortgagees as well as mortgagors. *See In re Miller*, 442 B.R. 621, 636-37 (Bankr. W.D. Mich. 2011). Nevertheless, Deutsche Bank argues that the ongoing borrower-lender relationship between the bank and the Bahras justify the Court using its equitable powers to set aside the 2011 foreclosure.

By any standard, Deutsche Bank fails to convince the Court to do equity here. Foreclosing on the house *now* simply does not require setting aside the prior foreclosure, and Deutsche Bank's desire to clean up chain of title is insufficient to disturb a decade-old sale. This raises a fatal issue: Deutsche Bank is suing the wrong party. To foreclose on the Property, the bank needs to sue GMAC, which holds title to the house, not the Bahras. Grabbing too many pickles at once, Deutsche Bank now cannot get its hand out of the jar. There is no genuine dispute of material fact here; the Court will grant the Government's motion for summary judgment and deny Deutsche Bank's motion on this issue. The first amended complaint will be dismissed.

### 2. The Government's request for a tax sale

The United States claims that the FDIC may have an interest in the Property. (Government's Br. in Supp. of Mot. to Am., PageID.1274.) It concedes that a tax sale cannot be ordered until the FDIC has been given notice. (Mot. to Am., PageID.1255.) The Government's motion for summary judgment will therefore be denied to the extent it requests a tax sale.

In its own motion for summary judgment, Deutsche Bank seeks dismissal of the Government's counterclaim on grounds that the tax liens at issue were extinguished by the 2011

9

foreclosure sale. For the reasons discussed below, this portion of Deutsche Bank's motion will be denied.

### 3. Validity of liens

#### (a) Government's tax liens

Deutsche Bank does not contest that the Government validly imposed and recorded tax liens on the Property in 2008 and 2010. Rather, the bank contends that those tax liens were extinguished by the 2011 foreclosure sale. The Government cannot sell the Property if its tax liens are gone.

Under Michigan law, "the foreclosure of a senior mortgage extinguishes the lien of a junior mortgagee where the junior mortgagee did not redeem at the foreclosure sale." *Advanta Nat'l Bank v. McClarty*, 667 N.W.2d 880, 886 (Mich. Ct. App. 2003). State law dictates the impact of a nonjudicial foreclosure on junior federal tax liens, provided that the Internal Revenue Service (IRS) is properly notified of the foreclosure sale. 26 U.S.C. § 7425(b)(2). Notice must be given at least twenty-five days before the foreclosure sale, by certified or registered mail or personal service, and must be served on the proper person or entity designated by regulation. 26 U.S.C. § 7425(c)(1).

The relevant regulation states that notice must be served on the IRS "official, office, and address specified in IRS Publication 786 . . . or any successor publication." 26 C.F.R. § 301.7425-3(a). Notices must be addressed to "IRS, Attn: Collection Advisory Group Manager" at the proper mailing address listed in IRS Publication 4235. IRS Pub. 786 (Rev. 4-2011).[6] Strict compliance is required; even minor mistakes will be treated as defective notice. *See United States v. Nipper*, 889 F. Supp. 2d 1260, 1271 (D.N.M. 2012) (quoting *Colorado Prop. Acquisitions, Inc. v. United*

---

[6] A revised version of IRS Publication 786 was published in May 2016. The version in effect at the time of the 2011 foreclosure sale is cited above and available in the record. (ECF No. 78-18.)

*States*, 894 F.2d 1173, 1175 (10th Cir. 1990) ("We recognize the harshness of [the notice requirements of section 7425]. This rule allows the IRS to receive actual notice . . . ignore the notice and still retain the right to levy upon the property.")). Indeed, failure to "mark the [notice] for the attention" of the proper group "[does] not meet the requirements of [section 7425]." *Elfelt v. Abbott*, No. 94-cv-10202, 1995 WL 238335, at *2-3 (E.D. Mich. Jan. 13, 1995).

That is the exact mistake Deutsche Bank made here. Though it sent notice to the proper building in Detroit, Michigan, the document is addressed to "IRS Technical Services Advisory," not the Collection Advisory Group Manager. (Notice of Nonjudicial Foreclosure, ECF No. 83-2, PageID.698.) Deutsche Bank calls this issue "a hyper-technical distinction without a difference." (Pl.'s Reply in Supp. of Summ. J., ECF No. 94, PageID.1115.) It makes a difference. Deutsche Bank provided defective notice of the 2011 foreclosure sale. The tax liens thus survived that sale and remain enforceable.

### (b) Deutsche Bank's mortgage

Deutsche Bank claims to own the 2002 note between IndyMac and the Bahras, as well as the associated mortgage securing that debt. The Government argues that the bank cannot show complete chain of title for either. If Deutsche Bank fails to establish chain of title, then whatever interest it has in the Property postdates the tax liens. The Government's liens would have priority over the proceeds from any sale of the Property (more on that later). With respect to the 2002 mortgage the crux of the Government's argument is that the Affidavit of Lost Assignment, recorded by GMAC in 2010, is insufficient to demonstrate that IndyMac assigned the 2002 note and mortgage to GMAC. If GMAC never had the 2002 mortgage in the first place, then it could not have transferred it to Deutsche Bank. The Government further contends that Deutsche Bank has failed to show that it holds the 2002 note.

*Standing*

As an initial matter, Deutsche Bank argues that the Government lacks standing to even challenge the chain of assignments for the 2002 mortgage and note.  The type of standing at issue here is not Article III standing, but rather standing under contract law.  *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 254 (6th Cir. 2014).  Deutsche Bank cites *Livonia Properties. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010), where, in a similar context, the Sixth Circuit stated "that a litigant who is not a party to an assignment lacks standing to challenge that assignment."  *Id.* at 102 (internal quotation marks omitted).  But, as the Government points out, the Sixth Circuit later described its statement in *Livonia* as "inartful[]."  *Slorp*, 587 F. App'x at 255.  A third party may challenge an assignment if that challenge would render the assignment void.  *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 361 (6th Cir. 2013) (applying Michigan law).  The Government's challenge would do just that.

The *Livonia-Slorp-Conlin* line of cases is not exactly analogous to the issues here.  Those cases all dealt with litigants attacking an assignment as a means of challenging a foreclosure action.  Here, the question is one of competing liens.  Both parties must establish that they have valid liens, and that those liens are senior to their competitor's.  Deutsche Bank has proffered evidence in the form of a chain of assignments relating to the mortgage and note to show that its purported lien dates back to 2002.  The Government is not required to simply accept that evidence and resign itself to a junior position.  It has standing to challenge those assignments.

*The 2002 Mortgage*

The Government claims that Deutsche Bank does not possess the 2002 mortgage because GMAC was not capable of assigning it in the first place.  This is because there is insufficient

12

evidence showing that GMAC received the mortgage from IndyMac. The Government attacks GMAC's Affidavit of Lost Assignment, written by GMAC's lawyers and not signed by anyone representing IndyMac, as self-serving, non-compliant with the statute of frauds, and ineffective as a means of assigning the mortgage.

The statute-of-frauds argument fails because "'mortgages are chattel interests in [Michigan], and may be transferred without writing.'" *Katulski v. CPCA Trust I*, 2015 WL 248655, at *6 (Mich. Ct. App. Jan. 20, 2015) (quoting *Nims v. Sherman*, 4 N.W. 434, 440 (Mich. 1880)). Whether an affidavit of lost assignment is sufficient to establish a mortgage's chain of title is a murkier question. The Michigan Supreme Court has not addressed the issue, and so this Court must base its decision on how it believes the highest state court *would* answer the question. *Croce v. N.Y. Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019). The Court "may consider the decisions of the State's courts of appeals" as part of the inquiry. *Id.*

*Katulski*, an unpublished opinion from the Michigan Court of Appeals, held that an affidavit of lost assignment was sufficient evidence to establish the chain of title for a mortgage to permit the defendant to foreclose on a house. *Katulski*, 2015 WL 248655, at *5. The foreclosure statute considered, Mich. Comp. Laws § 600.3204(3), states that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." If an affidavit of lost assignment can satisfy the chain-of-title requirement under section 600.3204(3), the Court sees no reason that such an affidavit could not be used to establish chain of title more generally. Moreover, there is no evidence showing that IndyMac, or the current holders of its assets, "ever objected to the assignment of its mortgage interest" to GMAC.[7] *Id.* Finally, as with the defendant

---

[7] That could possibly change after the FDIC is notified of this lawsuit.

13

in *Katulski*, GMAC recorded the Affidavit of Lost Assignment about a year before it sought to foreclose on the Bahras. *Id.*

The Court finds *Katulski* to be persuasive guidance. Where, as here, an entity records an affidavit of lost assignment well before seeking foreclosure and there is no indication that the purported assignor ever challenged the claimed mortgage assignment, such an affidavit is competent to establish chain of title. The Affidavit of Lost Assignment recorded by GMAC shows chain of title for the 2002 mortgage from IndyMac to GMAC. The "Corporate Assignment of Mortgage" (ECF No. 1-1, PageID.30), therefore shows that GMAC assigned the 2002 mortgage to Deutsche Bank. Unless the Government can point to evidencing showing that GMAC recorded a false affidavit of lost assignment, Deutsche Bank validly possesses the 2002 mortgage.

In the alternative, the Government unsuccessfully argues that the 2002 mortgage merged out of existence after the 2011 foreclosure sale. When the mortgagee itself purchases the property that it foreclosed, the mortgage attached to that property "merge[s] into the fee." *Sylvania Bank Co.*, 183 N.W.2d at 896. "But whether [merger] occurs depends fundamentally on the mortgagee's intention. If it is in his interest to preserve his lien separately from the fee, it will ordinarily be concluded that he did not intend to merge the lien into the fee." *Id.* Michigan courts presume that a mortgagee intends to keep the mortgage alive when the property in question is also subject to junior liens held by third parties. *Byerlein v. Shipp*, 451 N.W.2d 565, 569-70 (Mich. Ct. App. 1990). Extinguishing the mortgage would mean that the mortgagee loses its priority interest. "[I]t would be absurd for a mortgagee in such a circumstance to destroy her senior lien, which would only benefit junior lien holders, and thereby preclude collection of the debt owed her." *Id.* at 570. In addition to this presumption, Michigan courts will look to subsequent conduct between the mortgagor and mortgagee to discern the mortgagee's intent. *See Ponstein*, 276 N.W. at 475-76.

14

Here, as the Government notes, GMAC did attempt to evict the Bahras in 2012. (*GMAC v. Bahra*, Case No. 12-0995-LT, Compl., PageID.499.) But GMAC's conduct also points the other way: it extended the redemption period after foreclosure and, after the eviction attempt, continued negotiating a potential loan modification. (Emmet County Register of Deeds, PageID.766.) Moreover, it was clearly aware of the Government's junior tax liens. (Notice of Nonjudicial Foreclosure, PageID.698.) Given the context, the Court will not assume that GMAC willingly relinquished its favored position as the first in line to get paid. Deutsche Bank argues that the merger doctrine is inapplicable here because it was the beneficial owner of the mortgage in 2011, meaning that the mortgage and fee were not united when GMAC purchased the Property. However, even assuming that GMAC, not Deutsche Bank, owned the 2002 mortgage, merger did not occur for the reasons stated above.

*The 2002 Note*

The record holder of a mortgage can foreclose on a defaulting mortgagor, even if the foreclosing party does not hold the debt that the mortgage secures. *Residential Funding Co. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (both record mortgagee and holder of debt have standing to foreclose). The problem is that Deutsche Bank has not shown that it possesses the 2002 note. This means the bank cannot invoke the 2002 mortgage as a means of foreclosing and recovering the debt owed by the Bahras through the modified loan agreement.

The 2002 note is a negotiable instrument under Article 3 of the Michigan Uniform Commercial Code. Such instruments can be "specially endorsed" or "endorsed in blank." Mich. Comp. Laws § 440.3205. A special endorsement occurs when the endorser identifies a specific entity that may demand payment on the instrument. Mich. Comp. Laws § 440.3205(1). However, if the holder of an instrument endorses it without identifying a particular entity, then there is a

15

blank endorsement, which means that any party holding the instrument may demand payment from it. Mich. Comp. Laws § 440.3205(2). And a "holder may convert a blank endorsement that consists only of a signature into a special endorsement by writing, above the signature of the endorser, words identifying the person to whom the instrument is made payable." Mich. Comp. Laws § 440.3205(3).

According to Deutsche Bank, the 2002 note was endorsed from IndyMac to GMAC and then endorsed in blank from GMAC to Deutsche Bank. (First Am. Compl., PageID.7; First Feezer Aff., PageID.656.) The 2002 note attached to GMAC's Affidavit of Lost Assignment shows that it was endorsed to GMAC with a signature from Gail Valettie, Vice President at IndyMac. (Aff. of Lost Assignment, PageID.1087.) The note Deutsche Bank claims to hold bears the same endorsing language (minus the reference to GMAC) and signature from Valettie. (Note, ECF No. 1-1, PageID.16.) But GMAC, as holder of the 2002 note, had to endorse it to Deutsche Bank. The note would have to contain endorsing language and a signature from GMAC. Mich. Comp. Laws §§ 400.3204-400.3205. No such endorsement appears on the note proffered by Deutsche Bank. GMAC, of course, could have endorsed the note in blank; but it had to actually endorse it. It did not. Deutsche Bank has not shown that it validly possesses the 2002 note.

The 2002 mortgage exists to secure payment of the 2002 note. Deutsche Bank holds debt against the Bahras through the modified loan agreement, but as it stands, the evidence on the record is insufficient to connect that loan agreement to the 2002 note. Without that connection, the 2002 mortgage cannot be used to secure the Bahra's debts to Deutsche Bank.

### 4. Priority

The parties agree that the basic principle of "first in time[,] first in right" governs priority between the liens. *United States v. City of New Britain*, 347 U.S. 81, 85 (1954). The parties also agree that the Government properly recorded its tax liens on the Property. Priority here turns on

whether Deutsche Bank can prove that it possesses a security interest that predates the 2008 and 2010 tax liens. The 2002 mortgage has priority over the Government's liens. However, for the reasons described above, Deutsche Bank has not provided evidence showing it possesses the 2002 note that the mortgage secures. If the holder of that note does not come forward and assert its interest, the priority afforded by the 2002 mortgage is irrelevant.

### B. Default Judgment

Counter-defendants IndyMac, GMAC, and Michael Bahra are all in default. (*See* ECF Nos. 66, 67 (entering default against those parties).) The Government seeks a default judgment holding that these parties "have no right, title, claim, lien or interest" in the Property. (Appl. for Default J., ECF No. 74, PageID.430.) Deutsche Bank objected that entering default judgment could preclude certain issues that needed to be addressed in the cross-motions for summary judgment. The Government countered that Deutsche Bank could not challenge the request for default judgment since it did not represent the parties in question. That dispute is moot because the Court has now considered the summary judgment motions.

Default will be entered against Michael Bahra. Though GMAC has not answered the counter-complaint, it holds title to the Property. The Government's application for default judgment will therefore be granted against GMAC only to the extent that it has not asserted any right or interest that would prevent the Government from conducting a tax sale or would enjoy priority over the proceeds from such sale. Because the Court will grant the Government's motion to amend its counterclaim, default judgment will not be entered against IndyMac.

### C. Motion to Amend Counterclaim

It is unimpressive that it took the Government at least a year to realize that the FDIC may hold assets by IndyMac that bear on this case. That said, the Court does not find that the United States acted in bad faith. And the Court simply cannot order a tax sale until the FDIC has been

17

given notice. The Court does not believe that Deutsche Bank would be prejudiced by the amendment since the bank's complaint will be dismissed for the reasons set forth above. If anything, granting the motion will delay the Government's request for a tax sale and will give Deutsche Bank time to cure the evidentiary deficiencies identified in this Opinion, if it can do so.

## V. Conclusion

For the reasons stated, the Court will: (1) deny Deutsche Bank's motion for summary judgment; (2) grant in part the Government's motion for summary judgment; (3) grant in part the Government's application for default judgment; and (4) grant the Government's motion to amend its counterclaim. Deutsche Bank's complaint will be dismissed. The Government's request for a tax sale will be denied at this stage. Default judgment will be entered against Michael Bahra and GMAC. The Government will be ordered to notify the FDIC of this action. An Order will enter consistent with this Opinion.

Dated:  March 30, 2021                         /s/ Hala Y. Jarbou
                                                HALA Y. JARBOU
                                                UNITED STATES DISTRICT JUDGE